UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST CAWVEY,

    Plaintiff,

vs.

THE COUNTY OF MACOMB,
and RHONDA M. POWELL, individually
and in her official capacity,

    Defendants.

**DEMAND FOR JURY TRIAL**

Case No. 19-_____
Honorable:

---

**GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.**
BY: RAY CAREY (P 33266)
Attorney for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
Rcarey@gmgmklaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff, ERNEST CAWVEY, by and through his attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., complains against Defendants as follows:

1. This is an action for deprivation of Plaintiff's rights under the United States Constitution and violation(s) of the Michigan Whistleblowers Protection Act (hereinafter the "WPA"), MCL §§ 15.361, *et seq.*, all arising out of Plaintiff's employment relationship with Defendants.

## PARTIES

2. Plaintiff ERNEST CAWVEY (hereinafter "Plaintiff" or "Cawvey") is an individual residing the City of Brighton, in Livingston County, State of Michigan.

3. Defendant the COUNTY OF MACOMB (herein after the "Defendant County") is a county governmental corporate body duly organized in accordance with the constitution for the State of Michigan and applicable Michigan statutes and regulations and participates with the State of Michigan in the provision of welfare and other social services to residents of Macomb County, Michigan.

4. Defendant, RHONDA M. POWELL (hereinafter "Defendant Powell"), is an individual residing in the County of Macomb, State of Michigan, and who at all relevant times was and is employed by the Defendant County as its Director of Health and Community Services and was an agent of Defendant County within the meaning of MCLA § 15.361 (b).

5. Plaintiff was at all relevant times employed by the Defendant County as the Director of Macomb Community Action and reported directly to Defendant

Powell until his employment was abruptly terminated, on and effective March 18, 2019.

## JURISDICTION AND VENUE

6. This honorable court ha subject matter jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (a)(3) (jurisdiction over deprivation of constitutional rights claims), and 42 U.S.C. § 1983 (deprivations of Plaintiff's rights under the United States Constitution).

7. This honorable Court also has supplemental jurisdiction over Plaintiff's WPA claims pursuant to 28 U.S.C. § 1367.

8. This honorable Court has personal jurisdiction over Defendant County because it is a governmental corporate body duly organized in accordance with the constitution for the State of Michigan and applicable Michigan statutes and regulations.

9. This honorable Court has personal jurisdiction over Defendant Powell because she resides in and engages in regular and systematic business and other activities within Macomb County in the state of Michigan.

10. Venue is proper in this district court pursuant to 28 U.S.C. § 1391 (b) and (c) because all parties are located and/or reside within the Eastern District of

Michigan and the events that gave rise to Plaintiff's claims occurred within the Eastern District of Michigan.

11. Venue also is convenient in this judicial district.

## GENERAL ALLEGATIONS

12. Plaintiff commenced employment with the Defendant County on or about September 18, 2017, as Director of Macomb Community Action ("MCA").

13. Plaintiff's job performance was evaluated as more than satisfactory, if not exemplary, and he received no substantive discipline or warnings pertaining to his job performance or conduct throughout his employment with the Defendant County.

14. Not long after Plaintiff commenced employment with Defendant County, he told Defendant Powell that he did not deem it appropriate for him to approve timesheets required to generate payroll for three MCA employees ("the MCA employees' timesheets"), its Volunteer Coordinator, Public Information Manager, and a secretary who were friends of Defendant Powell because he could not verify whether they actually performed the work to which their timesheets pertained and because he believed that Defendant Powell or the Director of the Macomb County Health Department had more knowledge about whether they actually performed the work to which their timesheets pertained.

15. Plaintiff could not verify the accuracy of timesheets submitted by the Volunteer Coordinator because she was not in the office during regular business hours, she had been attending a college to earn a Bachelor's degree during normal County business hours with the permission of Defendant Powell, and she later attended classes during normal County business hours seeking to obtain a graduate degree.

16. Plaintiff could not verify the accuracy of timesheets submitted by the Public Information Manager because the work she performed was primarily for the Macomb County Health Department.

17. Plaintiff was genuinely concerned and rightly concluded that the timesheets should be approved and properly verified by someone with knowledge about whether the employees actually performed the work to which their timesheets pertained because the funding for much, if not all, of the revenue included in the MCA budget to pay the compensation for the three MCA employees was derived from federal, state, and philanthropic grants; Plaintiff was accountable for ensuring that MCA funds were expended in accordance with terms and conditions of the applicable federal, state, and philanthropic grants; and this would ensure that the employees were properly compensated for actual work time consistent with the requirements of the applicable federal, state, and philanthropic grants and that they were not involved in a scheme to embezzle money from the County equivalent to

any unearned compensation paid to them in violation of the applicable federal, state, and philanthropic grants.

18. Plaintiff was genuinely concerned and rightly concluded that the timesheets should be approved and properly verified by someone with knowledge about whether the employees actually performed the work to which their timesheets pertained because this would ensure that the employees were properly compensated for actual work time and that they were not involved in a scheme to embezzle money from the County equivalent to any unearned compensation paid to them in violation of section 174 of the Michigan Penal Code, MCLA § 750.174 and/or other Michigan statutes.

19. Defendant Powell instructed Plaintiff to approve the timesheets of these MCA employees anyway and regardless of whether he could verify whether they actually performed the work to which their timesheets pertained.

20. During the period between mid-2018 and February, 2019, the MCA finance department manager raised questions and concerns about the accuracy of the timesheets that had been submitted by the three MCA employees, i.e. those that Defendant Powell had directed Plaintiff to verify, and he initiated an investigation to determine whether they actually performed the work to which their timesheets pertained.

21. Plaintiff had previously told the finance department manager for MCA that he could not verify the accuracy of the timesheets even though he had approved the timesheets in accordance with the direction he received from Defendant Powell.

22. Plaintiff notified Defendant Powell that an investigation of the three MCA employees' timesheets had been initiated by the MCA finance department manager.

23. Defendant Powell then directed Plaintiff to instruct the MCA finance department manager to terminate the investigation ostensibly because he lacked authority to question or conduct an investigation concerning the MCA employees' timesheets once these had been approved by Plaintiff.

24. Plaintiff declined to direct the MCA finance department manager to stop his investigation concerning the MCA employees' timesheets contrary to what Defendant Powell had instructed him to do.

25. Plaintiff was later interviewed during and participated in the investigation of the MCA employees' timesheets.

26. Plaintiff advised the MCA finance department manager during the investigation that he told Defendant Powell that he did not deem it appropriate for him to approve timesheets required to generate payroll for the three MCA employees because he could not verify whether they actually performed the work to which their timesheets pertained.

27. Plaintiff advised the MCA finance department manager during the investigation that he had been instructed to approve the timesheets by Defendant Powell even though he could not verify the accuracy of the timesheets.

28. Plaintiff advised the MCA finance department manager during the investigation that he could not verify the accuracy of the timesheets even though he had approved these in accordance with the direction he received from Defendant Powell.

29. Plaintiff told the MCA finance department manager during the investigation that he could not verify the accuracy of timesheets submitted by the Volunteer Coordinator because she was not in the office during regular County business hours, she had been attending a college to earn a Bachelor's degree during normal County business hours with the permission of Defendant Powell, and she later attended classes during normal County business hours seeking to obtain a graduate degree with the permission of Defendant Powell.

30. Plaintiff told the MCA finance department manager during the investigation that he could not verify the accuracy of timesheets submitted by the Public Information Manager because the work she performed was primarily for the Macomb County Health Department.

31. In February, 2019, one or more of the three MCA employees sent a letter to Plaintiff with a complaint that the MCA finance department manager's investigation of their timesheets had created a toxic work environment.

32. Upon information and belief, Defendant Powell conspired with the employee to send the letter as a means to disrupt and thwart the continuing investigation of the MCA employees' timesheets.

33. Plaintiff referred the matters raised in the letter to the Human Resources Department of Defendant County for investigation and for advice and counsel about how to proceed.

34. During the course of the investigation, which occurred between February and March 18, 2019, the MCA finance department manager was accused of having made a racially insensitive remark at a work-related event after normal business hours approximately 1 year before commencement of the Human Resource Department investigation of the MCA employees' complaint.

35. The remark pertained to the hair cut or style of one of the three complaining MCA employees who is African American and a friend of Defendant Powell.

36. In early March, 2019, the Human Resources Department representative conducting the human resource related investigation recommended to Plaintiff during a telephone conference that MCA finance department manager be disciplined

9

for the remark attributed to him and Plaintiff effectuated appropriate discipline after and based on the results of the investigation.

37. During the telephone conference with the Human Resources Department representative, Plaintiff inquired about the status of MCA finance department manager's investigation of the MCA employees' timesheets, whether it would continue, and when it was expected to conclude.

38. The Human Resources Department representative and Plaintiff each separately discussed the outcome of the human resources related investigation with Defendant Powell.

39. The Human Resources Department representative also told Defendant Powell that Plaintiff inquired about the status of the MCA finance department manager's investigation of the MCA employees' timesheets, whether it would continue, and when it was expected to conclude.

40. On March 18, 2019, Defendant Powell and the Human Resources Department representative met with Plaintiff and abruptly notified him that his employment with Defendant County was terminated, effective that day.

41. Defendant Powell and the Human Resources Department representative gave no reason for the termination of Plaintiff's employment in response to an inquiry from Plaintiff about why this action was being taken.

42. Instead, they essentially stated that there was no need for them to articulate a reason for this action because Plaintiff had been employed by Defendant County "at will."

43. Defendant Powell directed that Plaintiff's employment with Defendant County be terminated because he questioned in conversations with Defendant Powell, the MCA finance department manager, and the Human Resources Department representative the propriety of her requirement that he sign the MCA employees' timesheets although he could not verify whether they performed the work to which the time sheets pertained.

44. Defendant Powell directed that Plaintiff's employment with Defendant County be terminated because he participated in the investigation pertaining to the MCA employees' timesheets; inquired about the status of the MCA finance department manager's investigation of the MCA employees' timesheets, whether it would continue, and when it was expected to conclude; and he would not instruct the MCA finance department manager to close the investigation of the MCA employees' timesheets.

45. Defendant Powell directed that Plaintiff's employment with Defendant County be terminated because she was concerned that Plaintiff was about to report his concerns about violations or suspected violations for the law with respect to the

MCA employees' timesheets to higher officials of Defendant County, law enforcement, and other public bodies as defined in the WPA.

## COUNT I
## VIOLATION OF 42 U.S.C.A. § 1983 FIRST AMENDMENT RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY

46. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if reiterated paragraph by paragraph.

47. Plaintiff enjoys rights under the First Amendment of the United States Constitution to be free from retaliation by persons acting under color of state law for engaging in protected free speech, to wit, to speak out and oppose illegal employment and other practices by a public entity, such as Defendant County and its officials or employees, including Defendant Powell.

48. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, questioning in conversations with Defendant Powell and others the propriety of her requirement that he sign the MCA employees' timesheets although he could not verify whether they performed the work to which the time sheets pertained.

49. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, participating in the investigation pertaining to the MCA employees' timesheets and stating to the MCA finance department manager that he told Defendant Powell that he did not deem it appropriate for him

to approve timesheets required to generate payroll for the three MCA employees because he could not verify whether they actually performed the work to which their timesheets pertained.

50. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, participating in the investigation pertaining to the MCA employees' timesheets and stating to the MCA finance department manager that he had been instructed to approve the timesheets by Defendant Powell even though he told her that he could not verify the accuracy of the timesheets.

51. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, participating in the investigation pertaining to the MCA employees' timesheets and stating to the MCA finance department manager that he could not verify the accuracy of the timesheets even though he had approved these in accordance with the direction he received from Defendant Powell.

52. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, participating in the investigation pertaining to the MCA employees' timesheets and stating to the MCA finance department manager that he could not verify the accuracy of timesheets submitted by the Volunteer Coordinator because she was not in the office during regular business hours, she had been attending a college to earn a Bachelor's degree during normal County business hours with the permission of Defendant Powell, and she later

attended classes during normal County business hours seeking to obtain a graduate degree with the permission of Defendant Powell.

53. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, participating in the investigation pertaining to the MCA employees' timesheets and stating to the MCA finance department manager that he could not verify the accuracy of timesheets submitted by the Public Information Manager because the work she performed was primarily for the Macomb County Health Department.

54. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, participating in the investigation pertaining to the MCA employees' timesheets and refusing to condone what could be tantamount to theft and/or misappropriation of Macomb County assets, fraudulent billing and embezzlement to the extent the MCA employees were not performing all of the work depicted on their timesheets and for which they were compensated.

55. Plaintiff's protected speech opposing illegal employment and other practices included, among other things, participating in the investigation pertaining to the MCA employees' timesheets and refusing to condone what could be tantamount to fraud against federal, state, and philanthropic sources of MCA revenue; misappropriation of County, federal, state, and philanthropic funds; fraudulent billing; and embezzlement of County, federal, state, and philanthropic

funds to the extent the MCA employees were not performing all of the work depicted on their timesheets and for which they were compensated or to the extent MCA funds were not expended in accordance with terms and conditions of the federal, state, and philanthropic grants and other sources of MCA revenue.

56. Beginning in September, 2017, and continuing through March 18, 2019, Plaintiff engaged in constitutionally protected speech on a matter of public interest related to Defendant Powell's conduct as a public official and employer when he told Defendant Powell and the MCA finance department manager that he did not deem it appropriate for him to approve timesheets required to generate payroll for the three MCA employees, its Volunteer Coordinator, Public Information Manager, and a secretary, because he could not verify whether they actually performed the work to which their timesheets pertained and because he believed that Defendant Powell or the Director of the Macomb County Health Department had more knowledge about whether they performed the work to which their timesheets pertained.

57. Beginning in February, 2019, and continuing through March 18, 2019, Plaintiff engaged in constitutionally protected speech on a matter of public interest related to Defendant Powell's conduct as a public official and employer when he told the MCA finance department manager that he could not verify the accuracy of timesheets submitted by the Volunteer Coordinator because she was not in the office during normal County business hours, she had been attending a college to earn a

Bachelor's degree during normal County business hours with the permission of Defendant Powell, and she later attended classes during normal County business hours seeking to obtain a graduate degree with the permission of Defendant Powell and when he told the MCA finance department manager that he could not verify the accuracy of timesheets submitted by the Public Information Manager because the work she performed was primarily for the Macomb County Health Department.

58. Beginning in April, 2019, and continuing through March 18, 2019, Plaintiff engaged in constitutionally protected speech on a matter of public interest related to Defendant Powell's conduct as a public official and employer when he inquired about the status of the finance department investigation of the MCA employees' timesheets, whether it would continue, and when it was expected to conclude.

59. On March 18, 2019, Defendant Powell, acting under color of law and for personal reasons (i.e., based on her personal relationship with the MCA subordinate employees), retaliated against Plaintiff because of his above referenced protected speech by terminating Plaintiff's employment with Defendant County as MCA Director.

60. Defendants terminated Plaintiff's employment because of or on the basis of his constitutionally protected speech on a matter of public concern.

61.   Defendants' termination of Plaintiff's employment because of his constitutionally protected speech abridged his right to freedom of speech in violation of the First Amendment of the United States Constitution.

62.   As a direct and proximate result of Defendants' wrongdoing, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

## COUNT II
## VIOLATION OF THE MICHIGAN
## WHISTLEBLOWERS' PROTECTION ACT

63.   Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if reiterated paragraph by paragraph.

64.   Plaintiff was an "employee" and Defendants were his "employer" or "agents" of his employer covered by and within the meaning of the WPA. MCL §§ 15.361, *et. seq.*

65.   Beginning in September, 2017, Plaintiff reported suspected violations of law, regulations, or rules promulgated by the United States, State of Michigan, and Defendant County that allegedly were committed by the MCA employees with knowledge and direction of Defendant Powell to a member of a public body, i.e.,

Defendant Powell, the MCA finance department manager, and a Defendant County Human Resources Department representative, to wit: Plaintiff reported the aforementioned suspected fraudulent and other illegal conduct.

66. Beginning in February, 2109, through May 18, 2019, Plaintiff participated in an investigation by a public body, i.e. the MCA finance department within Defendant County and the Defendant County Human Resources Department about whether the aforementioned suspected fraudulent and other illegal conduct violated federal, state, and county laws or regulations and standards of practice and the terms and conditions of federal, state and philanthropic grants or other funding sources.

67. Defendants retaliated against Plaintiff for reporting or being about to report the violations or suspected violations of law, regulation or rules of the United States, Michigan and Macomb County to a member of a public body by terminating Plaintiff's employment.

68. Defendants retaliated against Plaintiff for his instigation of and participation in the investigations pertaining to whether the aforementioned suspected, fraudulent and other illegal conduct violated federal, state, and county laws or regulations and standards of practice and the terms and conditions of federal, state and philanthropic grants or other funding sources.

69. The aforementioned retaliation by Defendants and their agents violated Plaintiff's rights under the WPA.

70. Defendant Powell directed that the retaliation be taken or imposed against Plaintiff.

71. Defendants retaliatory actions were intentional, wanton, willful, malicious, and taken in bad faith, in deliberate disregard of, and with reckless indifference to Plaintiff's rights and sensibilities.

72. As a direct and proximate result of Defendants' wrongdoing, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Ernest Cawvey respectfully requests that this Honorable Court grant the following remedies:

a. Declare that the aforementioned practices and actions of Defendants are unlawful and unconstitutional;

b. Declare that the acts and practices outlined above are in violation of the WPA;

c. Enjoin and permanently restrain these practices;

  d. Direct Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

  e. Award Plaintiff all lost wages and value of lost employee benefits, past and future, to which he is entitled;

  f. Award Plaintiff compensatory damages for mental anguish, emotional distress, humiliation and injury to his reputation;

  g. Award Plaintiff punitive and/or exemplary damages;

  h. Award Plaintiff's reasonable attorney fees and costs, including expert witness fees; and

  i. Grant such other legal or equitable relief as this Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff Ernest Cawvey, by his attorneys, GASIOREK, MORGAN, GRECO, MCCAULEY & KOTZIAN P.C., demands a trial by Jury.

Respectfully submitted,

GASIOREK, MORGAN, GRECO,
MCCAULEY & KOTZIAN, P.C.

BY: _____
Raymond J. Carey (P33266)
Attorney for Plaintiff
30500 Northwestern Hwy, Ste. 425
Farmington Hills, MI 48334
(248) 865-0001
rcarey@gmgmklaw.com

Date: June 14, 2019